## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      *Plaintiff,*

vs.

                                     Case No. 13-10169-EFM

JOSHUA DAVID BELLAH,

      *Defendant.*

## MEMORANDUM AND ORDER

Defendant Joshua Bellah has been convicted of one count of transportation of child pornography. Eight victims seek restitution under 18 U.S.C. § 2259. This matter comes before the Court on the United States' Motion for Restitution (Doc. 32). Based on Bellah's relative role in causing damages to these victims, the Court grants the Government's motion as modified in this order for restitution in the amount of $45,500 to be distributed among the eight victims.

### I. Factual and Procedural Background

In May 2014, Defendant Joshua Bellah was sentenced to 150 months in prison and 10 years of supervised release for his conviction for transportation of child pornography. A determination of restitution was deferred to a later date. In October 2014, the Government filed a motion for an order of restitution, and a hearing was held in November. The matter is now before the Court.

## II. Legal Standard

Under 18 U.S.C. § 2259, a district court is required to award restitution for certain federal criminal offenses, including offenses involving child pornography.[1] By statute, the issuance of a restitution order is mandatory, and district courts must order a defendant "to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court."[2] The "full amount of the victim's losses" is statutorily defined to include any costs incurred by the victim for—

(A) medical services relating to physical, psychiatric, psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.[3]

In *Paroline v. United States*, the Supreme Court imposed a proximate causation standard: "Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses."[4] In an attempt to provide guidance to district courts determining an amount of mandatory restitution, the Court held that

where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the

---

[1] *Paroline v. United States*, 134 S. Ct. 1710, 1716 (2014).

[2] 18 U.S.C. § 2259(b)(1), (b)(4)(A).

[3] 18 U.S.C. § 2259(b)(3).

[4] *Paroline*, 134 S. Ct. at 1722.

individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.[5]

To determine a defendant's relative role, the Court listed seven factors a district court may consider: 1) "the number of past criminal defendants found to have contributed to the victim's general losses;" 2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;" 3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);" 4) "whether the defendant reproduced or distributed images of the victim;" 5) "whether the defendant had any connection to the initial production of the images;" 6) "how many images of the victim the defendant possessed;" 7) "and other facts relevant to the defendant's relative causal role."[6]

The Court added that these factors should serve as rough guideposts for determining a restitution amount that fits the offense.[7] The amount should not be too severe nor a token or nominal amount.[8] A district court must issue a restitution order regardless of whether the defendant is able to pay and regardless of whether the victim receives compensation for injuries from any other source.[9] The competing goals of a restitution order are "that victims should be compensated and that defendants should be held to account for the impact of their conduct on

---

[5] *Id.* at 1727.

[6] *Id.* at 1728.

[7] *Id.*

[8] *Id.* at 1727.

[9] 18 U.S.C. § 2259(b)(4).

those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others."[10]

The Government has the burden of proving "the amount of loss sustained by a victim as a result of the offense" under the preponderance of the evidence standard.[11] The district court has "discretion in fashioning a restitution order"[12] and "must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses."[13] This approach "involves discretion and estimation," and restitution orders should not be arbitrary or capricious.[14]

### III. Analysis

The Government requests $50,000 in restitution for eight victims who have submitted requests. The Government requests $4,500 for the victim identified as Vicky; $3,500 for J_Blonde; $7,500 each for John Does I through V in the 8kids series; and $4,500 for the victim in the Spongebob series. Generally, the Government has examined the range and average of other restitution orders involving each victim and suggests an amount consistent with these awards. Bellah suggests restitution in the amount of $500 per victim ($4,000 total), in accordance with a recent order from another court in this district.[15]

---

[10] *Paroline*, 134 S. Ct. at 1729.

[11] 18 U.S.C. § 3664(e).

[12] 18 U.S.C. § 3664(a).

[13] *Paroline*, 134 S. Ct. at 1727–28.

[14] *Id.* at 1729.

[15] *See United States v. Laub*, 12-CR-40103-JAR, Doc. 104, pp. 25–31, 44.

There is no dispute that Bellah received the images and that the possession of images is a proximate cause of a portion of the each of the victims' damages. It is also not in dispute that each victim suffered losses as a result of the images. The question for the Court is the amount of restitution to award each of the eight victims.

### A. The Victims' Losses and the *Paroline* Factors

To arrive at a restitution amount, the first step suggests that the Court determine "the amount of the victim's losses caused by the continuing traffic in the victim's images."[16] Here, the Government submits that Vicky has outstanding general losses of $484,888.88 and that J_Blonde has outstanding general losses of $311,694. The Government submits that John Doe II has general outstanding losses of $751,000, which is approximately 76 percent of the total loss estimate of $988,304. The Government submits total losses to John Doe I of $924,409; to John Doe III of $1,174,060; to John Doe IV of $978,736; to John Doe V of $1,010,326 but did not provide updated amounts of outstanding losses. Taking into account the updated figures relating to John Doe II, the Court assumes that 76 percent of these totals approximates the general outstanding losses. The victim referred to as Spongebob has recently begun to seek restitution, and his representatives have not yet estimated his total losses. They submit a request for $26,000 for a psychological examination and $3,500 in attorneys' fees. The Government anticipates, and the Court assumes, that the total losses will be similar to those submitted by the other victims in this case.

The next step is for the Court to "set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those

---

[16] *Paroline*, 134 S. Ct. at 1728–29.

losses."[17] To determine the amount of such an award, "it makes sense to spread payment among a larger number of offenders in amounts more closely in proportion to their respective causal roles and their own circumstances so that more are made aware, though the concrete mechanism of restitution, of the impact of child-pornography possession on victims."[18] As noted previously, arriving at a proper restitution amount may be guided by various factors set forth in *Paroline*.

> *a) The number of past criminal defendants found to have contributed to the victim's general losses*

In its filing, the Government did not attempt to provide the Court with a number of past criminal defendants found to have contributed to the victim's general losses, calling such an estimate "completely unworkable."[19] But other courts citing this factor interpret this factor to mean the number of defendants who have been ordered to pay restitution to a particular victim.[20] The Government has provided these numbers for each victim through attached exhibits. As of August, 502 defendants had been ordered to pay restitution to Vicky.[21] There were 54 defendants ordered to pay restitution to J_Blonde.[22] Collectively, there were 49 defendants ordered to pay restitution to John Does I-V.[23] And four defendants had been ordered to pay restitution to Spongebob.[24]

---

[17] *Id*. at 1728.

[18] *Id*. at 1729.

[19] United States' Memorandum Regarding Restitution, Doc. 33, p. 6.

[20] *See, e.g., United States v. Dileo*, 2014 WL 5841083, at *5 (E.D.N.Y. Nov. 4, 2014).

[21] Doc. 34-1, p. 34.

[22] Doc. 34-1, p. 96.

[23] Doc. 34-1, p. 153.

[24] Doc. 34-1, p. 162.

*b) Reasonable predictions of the number of future offenders likely to be caught*
*and convicted for crimes contributing to the victim's general losses*

Again, the Government declined to predict the number of future defendants who may be convicted of crimes against these victims. The Court agrees that finding such a reasonable prediction is an unworkable standard. The Government submits that "it is unlikely that the future number of defendants will ever decrease."[25] Thus, it is relatively certain that there will be future offenders associated with each of these victims. The fact that these images are not isolated to Bellah warrants that the restitution should be spread among a larger number of offenders.

*c) Any available and reasonably reliable estimate of the broader number*
*of offenders involved*

The Government again declines to estimate how many offenders are involved with each of the victims. The presentence investigation report identifies at least one other person who traded Bellah child pornography through various email accounts. Thus, the Court notes that there are other offenders involved with Bellah and images involving these victims.

*d) Whether the defendant reproduced or distributed images of the victim*

Here, Bellah distributed illegal images through email, though the Government concedes that there is no direct evidence that Bellah distributed images of any of these eight victims requesting restitution in this case. The Court agrees that escalation of a restitution award is not warranted for this factor without direct evidence of distribution related to these victims.

*e) Whether the defendant had any connection to the initial production of the images*

The Government submits that there is no evidence that Bellah participated in the original production of any of these victims' images. Thus, escalation is not warranted for this factor.

---

[25] United States' Memorandum Regarding Restitution, Doc. 33, p. 8.

*f) How many images of the victim the defendant possessed*

Here, the Government submits that Bellah possessed one image of Vicky, three images of J_Blonde, 68 images of John Does I-V, and three videos and eight images of Spongebob. The Government submits that most of the images depict sexual acts, with the exception of those involving J_Blonde, which involve lewd exhibition. The Court notes that the description submitted of some of the images involving John Does I-V are masochistic in nature.

*g) Other facts relevant to the defendant's relative causal role*

Outside of its list of recommended factors, the U.S. Supreme Court suggests that the Government "could also inform district courts of restitution sought and ordered in other cases."[26] Another court has found significance in a method of awarding restitution that involves averaging the awards a victim received from other defendants.[27] The Government submits that the post-*Paroline* awards to Vicky range from $1,000 to $10,000, and the average (mean) is $3,273.57. For J_Blonde, the awards range from $500 to the highest unappealed order of $20,000, and the average is $3,449. For John Does I-V, the awards range from $500 to $25,000, and the average is $5,000. For Spongebob, a limited number of awards show that there has been one award of $1,200 and three awards of $1,000.

**B. The Restitution Award**

The Court has reviewed 11 other restitution orders by federal district courts, plus one affirmed by the First Circuit, that have been issued since *Paroline* was decided April 23, 2014.[28]

---

[26] *Paroline*, 134 S. Ct. at 1729.

[27] *See United States v. Miner*, 2014 WL 4816230, at *11–12 (N.D.N.Y. Sept. 25, 2014).

[28] *See United States v. Rogers*, 758 F.3d 37 (1st Cir. 2014); *United States v. Cooley*, 2014 WL 5872720 (D. Neb. Nov. 12, 2014); *Dileo*, 2014 WL 5841083; *United States v. Wencewicz*, 2014 WL 5437057 (D. Mont. Oct. 24, 2014); *United States v. McIntosh*, 2014 WL 5422215 (E.D. Va. Oct. 22, 2014); *United States v. Daniel*, 2014 WL

The Court recognizes that a handful of these other courts have determined restitution by dividing the amount of a victim's outstanding losses by the number of restitution orders.[29] The Court is not persuaded that this formula adequately results in fair restitution awards in general, and specifically not in this case in which one victim has four previous restitution awards and another has 502.[30] The Court, however, is persuaded by courts that based restitution, in part, on the number of images of each victim possessed, a significant factor that appears to be unaccounted for by the previously mentioned method.[31] The Court is persuaded that the more images are possessed by a defendant, the more damages are accountable to that defendant. And the Court is persuaded that the average of other awards is a rational guide to help determine a proper restitution amount.

The Court finds that increased awards to the John Does are warranted based on the number and nature of the images. The Court also finds that an increased award to Spongebob is warranted based on the number of images, taking into account that three of the 11 images are videos. With these factors in mind, the Court orders Bellah to pay the following amounts in restitution: $1,500 to Vicky; $1,500 to J_Blonde; $7,500 to each of the five John Doe victims; and $5,000 to Spongebob for a total restitution amount of $45,500.

---

5314834 (N.D. Tex. Oct. 17, 2014); *Miner*, 2014 WL 4816230; *United States v. Reynolds*, 2014 WL 4187936 (E.D. Mich. Aug. 22, 2014); *United States v. Watkins*, 2014 WL 3966381 (E.D. Cal. Aug. 13, 2014); *United States v. Crisostomi*, 2014 WL 3510215 (D. R.I. July 16, 2014); *United States v. Galan*, 2014 WL 3474901 (D. Ore. July 11, 2014); *United States v. Hernandez*, 2014 WL 2987665 (E.D. Cal. July 1, 2014).

[29] *See, e.g., Dileo*, 2014 WL 5841083, at *8–10; *Wencewicz*, 2014 WL 5437057, at *5; *Watkins*, 2014 WL 3966381, at *7; *Galan*, 2014 WL 3474901, at *6–7; *Hernandez*, 2014 WL 2987665, at *10.

[30] *See Miner*, 2014 WL 4816230, at *10 (concluding that this approach "is not appropriate in the particular circumstances presented here").

[31] *See McIntosh*, 2014 WL 5422215, at *7 (awarding $14,500 to Vicky based on possession of 51 photo images and 98 videos); *Reynolds*, 2014 WL 4187936, at *7 (increasing restitution awards based on 16 images of Cindy and 19 images of Vicky).

In accordance with the Government's motion, the Court enters an order of restitution for the following victims:

1) $1,500 for the victim of the "Vicky" series, payable to "Carol L. Hepburn in trust for Vicky" and mailed to 2722 Eastlake Avenue E, Suite 200, Seattle, WA 98102;

2) $1,500 for the victim of the "J_Blonde" series, payable to "Joseph Klest in trust for J_Blonde" and mailed to 1701 E. Woodfield, Suite 909, Schaumburg, IL 60173;

3) $7,500 each for John Does I, II, III, IV, and V of the "8kids" series, payable to "The Law Office of Erik Bauer in Trust for the 8 Kids Series" and mailed to 215 Tacoma Avenue South, Tacoma, WA 98402; and

4) $5,000 for the victim of the "Spongebob" series, payable to "Utah Crime Victims Legal Clinic in trust for Spongebob" and mailed to 3335 South 900 East, Suite 200, Salt Lake City, UT 84106.

**IT IS THEREFORE ORDERED** that the United States' Motion for Restitution (Doc. 32) is hereby **GRANTED** as modified above.

**IT IS SO ORDERED**.

Dated this 12th day of December, 2014.

*Eric F Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE